IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 7:18-cr-00022 |
| | ) | |
| CHRISTOPHER MCGOWAN | ) | |
| | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Christopher McGowan harmed others by putting a public servant and his family in fear of their lives. For this, he should be punished. However, Mr. McGowan is a decorated Army Veteran whose service to our country contributed to his diagnosis for PTSD, depression, and alcoholism. By McGowan's own admission, his abuse of alcohol resulted in him "stating some things [he] should not have" and "tak[ing] it too far." Presentence Investigation Report, ECF No. 115, at ¶ 31. While McGowan has struggled to comply with the Veteran Treatment Court requirements, he has taken responsibility for his actions and is making progress in treating his mental illnesses. His sentence should recognize and continue these efforts, while acknowledging the rigorous pretrial release conditions with which he has reasonably complied over the last three years.

The Presentence Investigation Report ("PSR") details the defendant's Guideline sentencing range. Defendant McGowan pled guilty to one count of Threats. PSR, ¶ 2. The defendant is in criminal history category I and his offense level is 17. PSR, ¶ 89. Based on these findings, the United States Sentencing Guidelines call for a sentence of 24 to 30 months' imprisonment, *see* PSR ¶ 89, which is reduced by the parties' agreed Rule 11(c)(1)(C) range of 0 to 6 months' incarceration, if accepted by the Court. Consistent with the plea agreement, the United States recommends a sentence of two years' probation. This recommendation is made in recognition of Defendant's past military service, his underlying mental health at the time of the

1

initial offense, and his attempts to comply with the Veteran Treatment Court. For these and other reasons expanded upon below, the United States respectfully submits that its recommended sentence is appropriate and satisfies the § 3553(a) factors.

## FACTUAL BACKGROUND

The PSR accurately details the defendant's conduct in this case.

## DISCUSSION

District courts generally must perform the following four steps in sentencing defendants: (1) "properly calculate the sentence range recommended by" the advisory Guidelines; (2) "determine whether a sentence within that range and within statutory limits serves the factors set forth in [18 U.S.C.] § 3553(a) and, if [it does] not, select a sentence that does serve those factors;" (3) implement any applicable mandatory statutory limitations; and (4) articulate, on the record, "the reasons for selecting the particular sentence" and especially, if applicable, "explain[] why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in § 3553(a)" than one within it. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); 18 U.S.C. § 3553(a). This memorandum outlines these factors and the bases for the United States' recommended sentence.

### A. Section 3553(a) Sentencing Factors

#### i. The Nature and Circumstances of the Offense

The nature and circumstances of the offense are described in the statement of facts, ECF No. 109, and the PSR, ECF No. 115, ¶¶ 1-4, 25-36. McGowan used his Twitter account to make multiple, violent threats against Congressman Bob Goodlatte and his family on December 17 and 18, 2017 and on April 1, 2018. PSR, ¶¶ 28-34. Specifically, on April 1, 2018, via Twitter, McGowan threatened to buy a gun and shoot Congressman Goodlatte with it because of his stance

2

on gun regulations. PSR, ¶ 33. In a world of mass shootings, threats to shoot someone are serious; and these threats were especially impactful coming just six weeks after the violent and emotional Stoneman Douglas High School shooting.

Although McGowan later tweeted that he did not actually intend to buy a gun or to kill Congressman Goodlatte, McGowan knew that these threats would cause fear. The seriousness of threatening a government official with bodily harm simply because they were performing their elected function is reflected in the six-level enhancement in the Guidelines; in fact, the Sentencing Commission strongly condemns this behavior, as best demonstrated by the fact that a single threat can result in two years of incarceration under the Guidelines.

      ii.      **The History and Characteristics of the Defendant**

The seriousness of McGowan's offense is mitigated by his lack of a criminal history, his military service, and his underlying mental health conditions. While McGowan acknowledged that he would get in fights as a child whenever his family moved, he has never been criminally convicted prior to this offense. PSR ¶¶ 56, 61.

In 2005, McGowan enlisted in the United States Army where he served until he was honorably retired due to a disability in October 2015. PSR ¶¶ 73-74, 107. During that time, he achieved the rank of Captain and was deployed in Afghanistan from 2012 to 2013. PSR ¶¶ 73-74, 107. In his yearly officer evaluations, McGowan was described as "a very bright and dynamic officer" who was "calm and collected under pressure" and had "unlimited potential." PSR ¶¶ 79, 80, 76. He was also described as the "first choice for every challenging mission" and "more responsible for the Battalion's core METL proficiency than any other Soldier in the unit." PSR ¶ 77. McGowan received multiple awards during his service including the Meritorious Service Medal, Army Commendation Medal, and Army Achievement Medal. PSR, ¶ 74.

After he retired from the Army in 2015, McGowan received full disability as a result of his PTSD. PSR ¶ 85. Despite the diagnosis, he never received treatment for his mental health or substance abuse until he entered the Veteran Treatment Court for this offense. PSR ¶¶ 69, 71. Leading up to the offense, McGowan, by his own admission, spent most of his time on the computer and drinking alcohol. PSR, ¶ 85. He estimated that he would drink a liter of liquor a day and that the only time he would leave home was to get more alcohol. PSR, ¶ 70. McGowan states that his PTSD was a large factor in his excessive alcohol consumption as he would drink it in response to panic attacks and feelings of depression. PSR, ¶ 70. Once drunk, McGowan acknowledges the impact the alcohol had on his online conduct as it caused him to "express myself too much emotionally" and "take it too far." PSR ¶ 31.

While the threats made in this case are serious, McGowan's mental illnesses and military service mitigate his conduct. The drunken tweets and threats stand in stark contrast to the calm and intelligent individual described in McGowan's officer evaluation reports. Additionally, McGowan's conduct on April 1, 2018 of approaching the police and making them aware of a number of drunken tweets he made demonstrates his acceptance of responsibility as he reported himself and took full ownership for the statements. PSR, ¶¶ 31-34.

The combination of McGowan's military service and attempts now to seek treatment for his mental illnesses warrants a departure from the sentencing guidelines. Since entering the Veterans Treatment Court, McGowan has taken promising steps towards receiving treatment and addressing his substance abuse. McGowan has completed an inpatient substance abuse treatment, anger management course, and received substance abuse and individual counseling through the VAMC. PSR, ¶¶ 9, 13, 24. Although McGowan's recovery has not been without numerous setbacks, including his inability to complete Veteran's Treatment Court, his progress has generally

been positive. In fact, a SCRAM bracelet was installed on McGowan to monitor his alcohol consumption on November 2, 2020. Since that time, he has not had any reported alcohol consumption, which has positively affected other aspect of his life. PSR, ¶¶ 15, 24.

In recognition of these efforts and his progress to date, the United States recommends a period of two years' probation that maintains many of the same conditions of release with which he currently complies, including but not limited to alcohol testing and treatment and regular mental health counseling.

      **iii.**    **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, Provide Just Punishment, Provide Adequate Deterrence, and Protect the Community from Further Crimes of the Defendant**

Threatening another person with bodily harm is a serious offense. It instills fear in the person against whom the threats are made and jeopardizes the sense of safety in the community. The seriousness of this crime is increased when the threats are made based on the victim's status as a government official. While McGowan's mental illnesses and substance abuse do not excuse his conduct, the fact that this is his first criminal offense and that he has demonstrated a desire to receive treatment justifies a departure from the guidelines. These factors indicate there is a reduced risk of him reoffending in the future. Additionally, the imposition of strict conditions of probation will serve to protect the community and provide adequate deterrence from future crimes.

      **iv.**    **The Need for the Sentence to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

As mentioned above, McGowan's PTSD, depression, and substance abuse demonstrate a clear need for medical treatment and counseling services. McGowan has made progress receiving these services over the past two years while in Veterans Treatment Court. The most effective manner in which to continue this progress is through a period of probation, which would allow

him to continue attending his group and individual counseling sessions and to work with his current doctors in treating his illnesses.

        **v.**        **Applicable Sentencing Range and Kinds of Sentences Available**

The PSR correctly details the Guidelines calculation. PSR, ¶¶ 43-52. With a criminal history category of I, the Guideline range recommends a sentence of 24 to 30 months incarceration for the defendant. PSR, ¶ 89.

        **vi.**        **Pertinent Policy Statement**

All relevant policy statements are cited in this memorandum where appropriate. The United States would note that a defendant's mental health may be a valid basis for a downward departure, where such condition is present to an unusual degree, as it is here. U.S.S.G. § 5H1.3.

        **vii.**        **The Need to Avoid Unwarranted Sentencing Disparities**

A departure from the sentencing Guidelines will not create an unwarranted sentencing disparity, as McGowan's case contains factors not present in other threats cases. Any disparity with the sentence of other defendants based on these factors would be warranted as they are factors that § 3553(a) instructs the Court to consider.

        **viii.**        **Sentencing Exhibits and Testimony**

The United States does not intend to present any additional evidence at the sentencing hearing unless it is required to do so to rebut any arguments or evidence raised by the defendant.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to a period of two years of probation, including the conditions that the defendant continue to receive alcohol testing and treatment and continue regular mental health counseling.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

s/Elizabeth M. Lapp
Elizabeth M. Lapp
Third- Year Practitioner

Heather L. Carlton
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel:   434.293.4283
Heather.carlton@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2021, I electronically transmitted the foregoing document via the Court's ECF system, which provides service on all counsel of record.

/s/ *Heather L. Carlton*
Assistant United States Attorney